UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZENAIDO GARCIA, et al.,

                    Plaintiffs,

-against-

GOOD FOR LIFE BY 81, INC., et al.,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/12/18

17-CV-07228 (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Before the Court is a proposed settlement in an action brought by plaintiffs Zenaido Garcia, MD Shamsul Arefeen, Vertano Felix, Victoriano Reyes, Martin Aguilar Hidalgo, Santiago Guachiac Sohom, and Elsa Uzhca Parapi against defendants Good For Life by 81, Inc., d/b/a Good for Life Gourmet Deli & Grocery, Dawa 91, Inc. d/b/a Dawa 91 Bagel Deli Grocery, Misook Noh, and Raymond Noh under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law (NYLL), §§ 190 *et seq.* and 650 *et seq.* Plaintiffs allege that they were employed as food service workers at defendants' delicatessens (known as "Good for Life" and "Dawa 91"), and that defendants violated the minimum wage and overtime provisions of the FLSA and the minimum wage, overtime, spread of hours, wage notice, and wage statement provisions of the NYLL. The parties have now settled their dispute and seek court approval of the settlement terms.

### Background

On May 10, 2018, after participating in a judicially-supervised settlement conference, the parties reached an agreement to resolve their dispute and consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. No. 27.) On June 11, 2018, they submitted their proposed settlement agreement (Agreement) (Dkt. No. 29-1) for approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), along with a joint letter (Joint Ltr.)

(Dkt. No. 29), discussing the factors enumerated in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), and time records kept by plaintiffs' counsel. Joint Ltr. Ex. C.

The Agreement requires defendants to pay a total of $110,000 in full settlement of the plaintiffs' claims. Ag. ¶ 3(a). The payment is to be made in full, within 14 days after the Court approves the settlement, by means of a check made out to plaintiffs' counsel. *Id.* ¶¶ 3(a), 3(c). The Agreement is silent as to how the payment is to be divided among the seven plaintiffs, and equally silent as to the amount to be allocated to plaintiffs' counsel for their fees and costs. As to the former question, counsel represent that each plaintiff will receive a "pro rata" share of the settlement amount based on "length of employment, hours worked, and rates paid." Joint Ltr. at 4. As to the latter question, plaintiffs' counsel submitted a supplemental letter dated June 11, 2018 (Supp. Ltr.) (Dkt. No. 30), requesting an award of $500 in costs plus one-third of the net settlement amount after deduction of costs, for a total of $36,996, "[i]n accordance with the retainer agreements between counsel and the plaintiffs." The retainer agreements have not been submitted to the Court.

The Agreement contains mutual but asymmetrical release provisions. Plaintiffs release "Defendants and all other Releasees" from any and all claims, known or unknown, that plaintiffs may have against them based on any conduct occurring through the date of execution of the Agreement. Ag. ¶ 2(d). The "other Releasees" include all of defendants' "presently or formerly related or affiliated persons or entities, family members, or successors, and the employees of any such entity, and any otherwise related persons or entities who Plaintiffs claim or may claim employed them within the meaning of the Fair Labor Standards Act ('FLSA') or the New York Labor Law ('NYLL') at any time during their respective employment at Good for Life Gourmet Deli & Grocery or Dawa 91 Bagel Deli Grocery." *Id.* ¶ 1(b). Defendants release plaintiffs – and plaintiffs alone – from any and all claims, known or unknown, that defendants may have against

them based on any conduct occurring through the date of execution of the Agreement. *Id.* ¶ 3(d). Plaintiffs acknowledge that "they are no longer employees of Defendants," *id.* ¶ 2(h), and that defendants have no obligation to rehire them. *Id.*

The Agreement also contains a "no assistance" provision barring plaintiffs from "testifying, providing documents or information, advising, counselling or providing any form of assistance to any person who wishes to make or who is making any claim against any Releasee," except during an investigation by a government agency, by order of a court, or if "otherwise prohibited [sic] by law." Ag. ¶ 2(e). In addition, there is a "no media" provision prohibiting plaintiffs and their counsel from "contact[ing] the media regarding this Agreement or its terms." *Id.* ¶ 2(g).

Finally, the Agreement contains a "Severability and Modification" clause that grants the Court "full discretion" to interpret "or modify" all provisions deemed to be illegal or unenforceable as written. Ag. ¶ 7(a). If "such interpretation or modification is not possible, such provision immediately shall become null and void, leaving the remainder of this Agreement in full force and effect." *Id.* ¶ 7(b).

After careful consideration of the parties' submissions, the Court concludes that the Agreement is fair and reasonable except for ¶¶ 1(b), 2(e), and 2(g). Paragraph 1(b) is overbroad and must be modified so as to make the parties' releases more nearly balanced. Paragraphs 2(e) and 2(g) contravene the remedial purpose of the FLSA and must be severed.

## Analysis

Settlements that dismiss FLSA claims with prejudice require approval of the district court or the Department of Labor. *See Cheeks*, 796 F.3d at 206. Before a district court enters judgment, it must scrutinize the settlement to determine that it is "fair and reasonable." *Wolinsky*, 900 F.

Supp. 2d at 335. A fair settlement must reflect "a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014).

### A.     Reasonable Financial Terms

Having supervised the settlement conference attended by the parties and their counsel on May 7, 2018, and having reviewed the parties' confidential *ex parte* letters prior to that conference, I am satisfied with the fairness of the negotiations and the financial terms of the Agreement. The net recovery (after deduction of the requested attorneys' fees and costs) of $73,004, when considered in light of the inherent time, cost, and risk savings for both sides in settling this case, is fair and reasonable.

The parties disagree, among other things, about whether plaintiffs' time cards (which they signed) accurately reflected not only the hours that plaintiffs worked but also the wages they were paid; whether defendants provided their employees with a designated meal break (and were entitled to take a meal credit); whether plaintiffs are entitled to "spread of hours" pay under the NYLL; and whether plaintiffs are entitled to statutory damages for defendants' alleged failure to provide plaintiffs with weekly wage statements. Joint Ltr. at 4-5. These issues were fully aired during the judicially-supervised settlement conference and would no doubt be aggressively litigated before and during trial.

Moreover, even if plaintiffs should obtain a more substantial judgment, they face a risk of non-collection, particularly given that one of defendants' delicatessens was recently sold, and the remaining delicatessen has "limited financial resources," Joint Ltr. at 6, as do the individual defendants. Given those factors, the overall settlement amount reflects a "reasonable compromise of disputed issues." *Mamani*, 2014 WL 2971050, at *1.

4

**B.     Attorneys' Fees and Costs**

Plaintiffs' counsel seek an award of $500.00 in costs, to cover the filing fee and the cost of service of process. Supp. Ltr. at 1. These costs are commonly reimbursed by courts in this District, and are reasonable. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013). Counsel also seek a fee award calculated as 33.33% of the net settlement amount ($36,496.00), which they say their clients approved in their retainer agreements. Supp. Ltr. at 1. In support of their fee application, counsel submitted detailed timesheets showing that attorney Justin Cilenti and paralegal Tatiana Cevallos, spent a total of 113.1 hours on this matter (at hourly rates of $400 for Cilenti and $100 for Cevallos, except for travel time, which was recorded at a 50% discount), for a total lodestar of $37,120. Joint Ltr. Ex. C. Plaintiffs note that the "lodestar is slightly more than the fees requested herein." *Id.* at 6.

To determine what portion of an FLSA settlement is reasonably allocated to attorneys' fees, a court may use either the "lodestar" method or the "percentage of the fund" method. *Lopez v. Ploy Dee, Inc.*, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016). Under the percentage of the fund method, which the Court applies here, attorneys' fee awards of one third or less of the total settlement amount are frequently accepted in this District. *See, e.g.*, *Zhang v. Lin Kumo Japanese Rest., Inc.*, 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (reducing fee award from 37% to 33% in FLSA settlement); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases); *cf. Trinidad v. Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) (reducing fee award from 33% of a "relatively modest" gross settlement amount obtained for a class of over 4,000 members to 25% of the net settlement). Here, plaintiffs' counsel request $500 in costs and $36,496 in fees, which represents 33.33% of the net

5

settlement amount ($109,500) after deduction of costs. The award falls within the range which is ordinarily acceptable.

This Court's practice, even in non-class cases, is to review counsel's billing records to ensure that a seemingly reasonable contingency agreement or other percentage-of-the-fund award is not, in fact, unreasonable in light of any unusual circumstances or unique features of the case. *See, e.g., Zhang*, 2015 WL 5122530, at *2-4 (reviewing reasonableness of counsel's fees under both the lodestar and the percentage-of-recovery method); *Velasquez v. Safi-G, Inc.*, 137 F. Supp. 3d 582, 586 (S.D.N.Y. 2015) (rejecting one-third contingency fee as unreasonable where, among other things, little work was done prior to settlement and "nearly half" was done "after counsel had already been paid"). In this case, the billing records raise no such concerns.

### C.   Overbroad Releases

The Agreement contains broad general releases, which are mutual to the extent that both sides release and waive all of their claims against one another, whether or not asserted in this action, arising on or before the date the parties executed the Agreement. *See* Ag. ¶¶ 2(c)-(d), 3(d).

This Court has previously held that broad, general releases may be permissible in non-class FLSA cases if, among other things, the plaintiffs no longer work for the defendants and the releases are mutual. *See, e.g., Cionca v. Interactive Reality*, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (Moses, M.J.); *see also Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("In my experience, parties come to a settlement conference in a wage-and-hour case hoping to achieve a resolution of all claims, including any other claims that they may have against each other (whether pled or unpled in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future."); *Plizga v. Little Pol. Rest. Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (Moses, M.J.) (approving "broad but mutual" provisions

that released "both plaintiff and defendants from liability for any past claims each might have against the other" where plaintiff was "no longer an employee of the defendants, eliminating the danger that the release was obtained through improper job-related pressure," and where the total settlement payment exceeded the value of plaintiffs' likely recovery under the FLSA).

In this case, however, the parties' releases are not mutual in terms of their breadth or extent. While "Defendants" simply release "Plaintiffs," Ag. ¶ 3(d), plaintiffs purport to release not only the named defendants but also "all presently or formerly related or affiliated persons or entities, family members, or successors, and the employees of any such entity, and any otherwise related persons or entities who Plaintiffs claim or may claim employed them" during their employment at defendants' delicatessens. *Id.* ¶ 1(b). As written, the wording of ¶ 1(b) is both vague and overbroad. It could be used, for example, in an attempt to bar *any* claim by a plaintiff against Mr. Noh's second cousin once removed, or against any vaguely "related" person for whom a plaintiff once worked, even if it was in a different store (or a different business), so long as the claim arose during the time of his or her employment with defendants.

To pass muster under *Cheeks*, ¶ 1(b) must be limited to include only the named defendants, the corporate defendants' predecessors and successors, and any other person or entity that plaintiffs claim, or may claim, to have been their employer for purposes of their work at Good for Life or Dawa 91.

With this limitation, the parties' release would not present any fairness issue. *See Pinguil v. YTF Hair Extensions Inc.*, 2018 U.S. Dist. LEXIS 26010, at *12 (S.D.N.Y. Feb. 15, 2018) (Moses, M.J.) (modifying broad release provisions so that plaintiffs released defendants and affiliated persons and entities only to the extent that such persons and entities were acting in their

capacity as defendants' affiliates); *see also Plizga*, 2016 WL 9307474, at *6 (noting types of release provisions approved by judges in this District in wage and hour cases).

### D. Unenforceable Provisions

The plaintiffs' releases, although overbroad as written, can be modified so as to "be made valid, legal and enforceable." Ag. ¶ 7(a). The no-assistance and no-media provisions, however, are contrary to the remedial aims of the FLSA and must be severed.

Provisions that prohibit a plaintiff from voluntarily assisting other individuals who may have claims against their former employer, including by "providing documents or information," and provisions that prohibit a plaintiff or her attorney from contacting the media, are "in effect, partial confidentiality clauses, which are improper in FLSA settlements because they are contrary to well-established public policy, regardless of whether they are unilateral or mutual." *Pinguil v. YTF*, 2018 U.S. Dist. LEXIS 26010, at *10 (internal quotation marks and citation omitted). The no-assistance provision "curtail[s] Plaintiffs' ability to discuss their settlement with others," *Souza*, 2015 WL 7271747, at *4, which is "contrary to the remedial aims of the FLSA." *Lopez v. Ploy Dee*, 2016 WL 1626631, at *3 (finding provision that requires the plaintiff not to "directly or indirectly encourage, induce, solicit, or assist anyone to file a wage and hour action or collective or class action against" the defendants impermissible); *see also Nieto v. Izzo Constr. Corp.*, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018) (finding no-assistance clause similarly impermissible where it appeared "designed to frustrate the remedial purposes of the FLSA"); *Douglas v. Spartan Demolition Co. LLC*, 2017 U.S. Dist. LEXIS 105289, *4 (S.D.N.Y. July 07, 2017) (finding provision that "bars Plaintiffs from voluntarily testifying, providing documents or information, advising, counselling or providing any other form of voluntary assistance to any person or entity who wishes to make or is making any claim against Defendants . . . contrary to

8

the remedial purposes of the statute"); *Bao Cheng Fu v. Mee May Corp.*, 2017 U.S. Dist. LEXIS 49529, at *5-6 (S.D.N.Y. Mar. 31, 2017) (same).

The no-media provision is similarly unenforceable. Provisions that prohibit a party from contacting the media can "prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others) who can then use that information to vindicate their statutory rights." *Amaro v. Barbuto, LLC*, 2017 WL 476730, at *3 (S.D.N.Y. Feb. 2, 2017) (removing a provision that prevented plaintiff from revealing to any "outlet, including newspapers, television stations, and radio stations, *inter alia*, the fact or existence of this Settlement Agreement, and . . . any aspect of any of the operations and activities of [defendants] as alleged by [plaintiff] in the Action" from the settlement agreement). These provisions impermissibly undermine the FLSA's remedial purposes by restricting workers from using the media to "publicize both the wrongdoing of the employer and the possibility of success more generally." *Camacho v. Ess-A-Bagel, Inc.*, 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015). Access to the media is particularly important because the plaintiffs in this case are low-wage employees, some of whom do not speak English well – precisely the people who require the protection of the FLSA. *See Lopez v. Knights of Cabiria*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("Among the people who require the protection of the FLSA are workers who are poorly educated and non-English speaking."). The media plays a key role in connecting individuals today – including low-wage, non-English speaking workers living far from their original homes – to matters of interest to them. Those communities may "have much to gain from the diffusion of information about their employment rights" through the media. *See Camacho*, 2015 WL 129723, at *2. Barring plaintiffs from contacting the media is thus not a trivial infringement on their ability to spread the word "to other

workers" who may then be able to "vindicate their statutory rights." *Lopez v. Ploy Dee*, 2016 WL 1626631, at *3.

Moreover, the no-media provision applies to plaintiffs only. *See Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 345 (S.D.N.Y. 2016) (Moses, M.J.) (finding a confidentiality provision that applied only to plaintiffs "contrary to well-established public policy.") The parties do not provide any justification for either provision, much less justification sufficient to overcome the public policy considerations outlined above. *Cf. Garcia v. Jambox, Inc.*, 2015 WL 2359502, at *5 (S.D.N.Y. Apr. 27, 2015) ("[T]he court should not approve a confidentiality provision absent compelling justification.").

No compelling justification having been offered for these provisions, the Court holds that ¶¶ 2(e) and 2(g) violate the public policy animating the FLSA and are therefore invalid and unenforceable.

## Conclusion

For the reasons set forth above, the Court finds that the parties' settlement is fair and reasonable except for the "releasee" definition in ¶ 1(b) of the Agreement, the no-assistance provision in ¶ 2(e), and the no-media provision in ¶ 2(g). As to ¶ 1(b), the Court modifies it, in accordance with ¶ 7(a), as follows:

> "Releasees" shall be defined to include Defendants herein, and the corporate defendants' predecessors and successors, as well as any other person or entity that plaintiffs claim, or may claim, to have been their employer within the meaning of the FLSA or the NYLL for purposes of their work at Good for Life or Dawa 91.

As to ¶¶ 2(e) and 2(g), the Court finds that it is not possible to modify or interpret them so as to render them enforceable; consequently, ¶¶ 2(e) and (g) are severed and "immediately shall become null and void." *Id.* ¶ 7(b).

The Court finds that the Agreement, as modified, is fair and reasonable as required by *Cheeks*, 796 F.3d 199, and APPROVES the Agreement as modified in the manner set forth above. The Court will retain jurisdiction as requested for the limited purpose of enforcing the Agreement as modified. It is hereby ORDERED that this action is DISMISSED with prejudice and without costs. The Clerk of Court is directed to close the case.

Dated: New York, New York
      July 12, 2018

**SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**
